**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JHAN CARLOS RONDON CASTELLANO,

                Petitioner,

    vs.

TODD BLANCHE, *et al.*,[1]

                Respondents.

Case No.: 2:26-cv-00124-GMN-BNW

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Jhan Carlos Rondon Castellano's[2] Amended Petition for Habeas Relief, (ECF No. 13). Federal Respondents Michael Bernacke, Pam Bondi, Todd Lyons, Kristi Noem, and Kerri Ann Quihuis filed a Response, (ECF No. 19), to which Petitioner filed a Reply, (ECF No. 21).[3]

**I.   BACKGROUND**

Petitioner Jhan Carlos Rondon Castellano is a citizen of Venezuela who was paroled into the United States in 2023. (Am. Pet. 3:4–6); (I-94, Ex. 1 to Am. Pet. Exs., ECF No. 14-1). He sought asylum after his arrival based on his fear of persecution if returned to Venezuela. (Removal Order, Ex. C to Fed. Resp., ECF No. 19-4). On July 26, 2025, Petitioner was arrested in Salt Lake County, Utah, on charges of forgery and theft. (Booking Sheet, Ex. 5 to Am. Pet., ECF No. 14-5). Although he posted bail on July 26, Petitioner remained in state

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted or currently named Kristi Noem. The Clerk of Court is kindly directed to update the docket to reflect these substitutions.

[2] The docket erroneously reflects Petitioner's name as "Rondon Castellano Jahn Carlos," but his Amended Petition identifies Petitioner's correct name as "Jahn Carlos Rondon Castellano." The Clerk of Court is kindly directed to change Petitioner's name on the docket to reflect the name provided in the Amended Petition.

[3] Respondent John Mattos also filed a Response, (ECF No. 20), indicating that he has no independent authority to release Petitioner, and thus takes no position on the relief sought.

custody until August 5, 2025, when he was transferred to ICE custody and placed in removal proceedings. (*Id.*). Because he was taken into ICE custody, he did not have an opportunity to consult with an attorney about the charges and was not able to attend his initial appearance, which resulted in the Utah court issuing a warrant based on Petitioner's failure to appear for the hearing. (Am. Pet. 12–14); (Salt Lake County District Court Docket at 4, Ex. 4 to Am. Pet., ECF No. 14-4).

While in ICE detention, Petitioner was denied bond because the Immigration Judge ("IJ") found he was subject to "[m]andatory detention under Laken-Riley Public Law." (IJ Bond Order, Ex. B to Fed. Resp., ECF No. 19-3). On October 20, 2025, Petitioner had a final hearing on the merits of his I-589 application. (Removal Order, Ex. C to Fed. Resp.). The IJ denied Petitioner's I-589 application. (*Id.*). Petitioner filed an appeal to the Board of Immigration Appeals on October 21, 2025, which remains pending. (Notice of Appeal, Ex. D to Fed. Resp., ECF No. 19-5). With this Petition, Petitioner challenges his continued detention and requests either a constitutionally adequate bond hearing or immediate release. (*See generally* Am. Pet.).

## II. LEGAL STANDARD

### A. Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and. . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction

includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## B. Statutory Detention Scheme

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, two statutory provisions generally govern the government's authority to detain noncitizens during the pendency of removal proceedings: 8 U.S.C. §§ 1225(b) and 1226. In *Jennings v. Rodriguez*, 538 U.S. 281 (2018), the Supreme Court explained these statutory provisions. The Court explained that § 1225 generally governs "at the Nation's borders and ports of entry, where the Government must determine whether [a noncitizen] seeking to enter the country is admissible." *Id.* at 287. In contrast, § 1226 "generally governs the process of arresting and detaining" noncitizens already "inside the United States." *Id.* at 288.

8 U.S.C. § 1225 authorizes the government to detain certain noncitizens seeking admission into the United States. *Id.* at 289. Section 1225(b) applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)). Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are subject to mandatory detention and

may only be released on parole "for urgent humanitarian reasons or significant public benefit." *Id.* at 288 (citing § 1182(d)(5)(A)).

Noncitizens subject to detention under either sub-section of § 1225(b) may be temporarily released on humanitarian parole. *See Jennings*, 583 U.S. at 288. Humanitarian parole is authorized under 8 U.S.C. § 1182(d)(5)(A). Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Once humanitarian parole under § 1182(d)(5) is terminated, the noncitizen is "returned to the custody from which he was paroled." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

## III.   DISCUSSION

Petitioner has been in ICE custody for over nine months without a bond hearing while in removal proceedings. He argues that he is currently detained under § 1226(c) as amended by the Laken Riley Act, which he asserts is unconstitutional as applied to him. (Am. Pet. 5:1–10:13). Federal Respondents argue that § 1226(c) and § 1225(b)(2) both allow for Petitioner's prolonged detention without a bond hearing. Though the parties disagree as to which section of the INA governs Petitioner's detention, the Court need not reach that question because it finds that Petitioner's detention violates his due process rights regardless of the governing statute.

### A. Humanitarian Parole

As explained above, applicants for admission face mandatory detention under § 1225 but may be released on parole "for urgent humanitarian reasons or significant public benefit," under 8 U.S.C. § 1182(d)(5)(A). *Jennings*, 583 U.S. at 287. This exception to mandatory detention, often referred to as humanitarian parole, may be granted "only on a case-by-case basis." 8 U.S.C. § 1182(d)(5)(A). Further, the implementing regulations require that a

noncitizen "present neither a security risk nor a risk of absconding." 8 C.F.R. 212.5(b).  Thus, if a noncitizen has been granted humanitarian parole, it means that a DHS official decided that the individual did not pose a security or flight risk. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).

Here, the Court finds that Petitioner was granted humanitarian parole under § 1182(d). Though Federal Respondents do not acknowledge this in their Response, Petitioner attaches his form I-94 to his Amended Petition showing he was granted humanitarian parole.[4] (I-94, Ex. 1 to Am. Pet. Exs.).

The agency can terminate humanitarian parole in two ways.  First, it terminates automatically if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1).  Second, if parole is not terminated automatically, either "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled."). In such instances, the noncitizens must be provided with written notice of the parole termination. 8 C.F.R. § 212.5(e)(2)(i).

Regardless of the type of termination, once a noncitizen's parole has been terminated, implementing regulations require that "any order of exclusion, deportation, or removal previously entered *shall be executed*." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added); *see also* 8 C.F.R. § 212.5(e)(2).  "If the exclusion, deportation, or removal order cannot be executed

---

[4] Petitioner's Form I-94 shows his class of admission is "DT," which is the code for humanitarian parole under § 1182(d)(5). *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. Oct. 1, 2025).

within a reasonable time, the [noncitizen] *shall again be released* on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added). Stated differently, unless detention is required for the timely removal of a noncitizen, continued detention following release on parole must be supported by individualized assessment by an authorized DHS official. *Id.* Otherwise, implementing regulations require that a noncitizen be returned to humanitarian parole. *Id.*

As explained above, Petitioner here was paroled into the country in December 2023 under 8 U.S.C. § 1182(d)(5)(A). Several courts in the Ninth Circuit have concluded that when a noncitizen is paroled under § 1182, the government cannot summarily revoke that parole without offending due process. *See Velasquez-Chinga v. Noem*, No. 3:26-cv-00105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026) (collecting cases); *Mendez Oreilly v. Blanche*, No. 2:26-cv-00278-GMN-EJY, 2026 WL 1031192, at *3–5 (D. Nev. Apr. 16, 2026). Rather, due process for "parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination." *Araujo v. LaRose*, No. 25-cv-02942-BTM-MMP, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025) (citing *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1165 (S.D. Cal. 2025) (analyzing factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976))). While not binding, the Court finds the reasoning in these cases persuasive and adopts it for the reasons discussed below.

Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside the borders of the United States, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful,

unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.  Thus, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).  But the "recognized liberty interests of U.S. citizens and [noncitizens] are not coextensive: the Supreme Court has 'firmly and repeatedly endorsed the proposition that Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (quoting *Demore*, 538 U.S. at 522).

To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1203–07 ("Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").[5]  Under *Mathews*, "identification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The first *Mathews* factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. *See Mathews*, 424 U.S. at 335.  Here, that is Petitioner's interest in being free from imprisonment, "the most

---

[5] The Ninth Circuit in *Rodriguez Diaz* "assumed without deciding" that the *Mathews* test applies in due process challenges to immigration detention. 53 F.4th at 1207.  However, the *Rodriguez Diaz* court noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention. *Id.* at 1204–05 (citing *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)).  The court also explained that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings. *Id.* at 1206 (citing *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004).  Accordingly, the Court will apply the *Mathews* test here.

elemental of liberty interests." *Hamdi*, 542 U.S. at 529. Further, the Supreme Court has recognized that a protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). In *Morrissey v. Brewer*, the Supreme Court explained that when placed on parole, "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." 408 U.S. 471, 482 (1972). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84. Here, Petitioner was granted humanitarian parole and released into the United States. (I-94, Ex. 1 to Am. Pet. Exs.). Petitioner's parole status created a protectable expectation of Petitioner's continued liberty, and the Court thus finds that the first factor weighs in favor of Petitioner.

The second factor considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The implementing regulations for humanitarian parole require that a noncitizen "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Thus, the initial determination that Petitioner should be paroled "reflects a determination by the government that [Petitioner] is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018*)*; *see Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."). Civil immigration detention is "nonpunitive in purpose and effect[,]" and is justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690. Thus, in order to re-detain Petitioner, the government "must be able to present evidence of materially

changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk." *Saravia*, 280 F. Supp. 3d at 1176.

The risk of erroneous deprivation of Petitioner's liberty interest is high where the government provides no justification for Petitioner's re-detention, and Petitioner has no opportunity to rebut that justification. *See Luo v. LaRose*, No. 25-cv-3848-LL-VET, 2026 WL 202872, at *3 (S.D. Cal. Jan. 27, 2026) (citing *Pinchi*, 792 F. Supp. 3d at 1035).  This is especially true where the government need only show that the "purpose of [Petitioner's] parole has been served" in order to revoke that parole. 8 U.S.C. § 1182(d)(5)(A).  The breadth of that standard affords the government substantial discretion to re-detain Petitioner, which compounds the risk of erroneous deprivation. *See Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025) (reasoning in the bond hearing context that "unreviewable" government direction to detain creates a high risk of erroneous deprivation).  It follows that the value of additional procedural safeguards, such as notice and an opportunity to be heard, is likewise high.

Here, there is no indication that Petitioner's parole was terminated prior to his re-detention, and if it was terminated, he was not afforded notice nor any means to challenge the revocation of his parole.  While Petitioner was arrested for forgery and theft charges prior to being detained by ICE, that does not obviate his due process rights.  Even if it is possible that the arrest may provide the government with a justification to revoke Petitioner's parole, the government must still inform Petitioner of that justification and provide Petitioner an opportunity to rebut it.  Because the government did not do so here, the Court finds that the second *Mathews* factor weighs in favor of Petitioner.

The third and final *Mathews* factor considers the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.  The Court acknowledges that the

government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, the government's interest in detaining Petitioner without a hearing is low. *See Morrissey*, 408 U.S. at 483 (explaining that "the State has no interest in revoking parole without some informal procedural guarantees"). Further, in "immigration court, custody hearings are routine and impose a 'minimal' cost." *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094–95 (E.D. Cal. 2025)). Indeed, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Accordingly, the Court concludes that the third *Mathews* factor also weighs in favor of Petitioner.

The Court thus finds that all three of the *Mathews* factors weigh heavily in favor of Petitioner, and therefore Petitioner was entitled to both notice and an opportunity to be heard before his humanitarian parole under § 1182(d)(5)(A) could be revoked. Because Petitioner received neither here, the Court finds that the revocation of his parole violates his rights under the Due Process Clause of the Fifth Amendment.

**B. Section 1226(c)**

In addition, the Court finds that Petitioner's mandatory detention under 1226(c) also violates his due process rights. Both parties agree that Petitioner is subject to mandatory detention under § 1226(c), as amended by the Laken Riley Act, because he has been charged with a theft-related offense. (Fed. Resp. 7:24–9:15); (Am. Pet. 5:25–26). Petitioner argues that his mandatory detention under the Laken Riley Act, based on an offense that he has not been convicted of and has had no opportunity to defend against, violates his due process rights.

Section 1226(c) provides that detention is mandatory for certain noncitizens. Prior to the recent amendment, § 1226(c) provided that DHS "shall take into custody" noncitizens who "hav[e] committed" certain enumerated offenses, *see* 8 U.S.C. § 1226(c)(1)(A)–(b), have "been sentence[d] to a term of imprisonment for at least 1 year" for certain enumerated offenses, *id.* § 1226(c)(1)(C), or who are members or participants in terrorist activities or organizations, *id.* § 1226(c)(1)(D). In such cases, the Supreme Court has found that detention without a bond hearing is justified "for the brief period necessary for [the nonciziten's] removal proceedings." *Demore*, 538 U.S. at 513.

The Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025), added a new subparagraph: 8 U.S.C. § 1226(c)(1)(E). That new subparagraph makes detention mandatory for noncitizens who satisfy two conditions: (1) the noncitizen must be "inadmissible under paragraph (6)(A), (6)(C), of (7) of section 1182(a) of this title,"[6] and (2) must "[be] charged with, . . . arrested for . . . convicted of, admit[] having committed, or admit[] committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or" certain violent offenses. 8 U.S.C. § 1226(c)(1)(E). Detention is mandatory under the Laken Riley Act, even if a noncitizen has not been convicted of the enumerated offenses.

Petitioner has been arrested for a charge of misdemeanor theft; he is therefore subject to mandatory detention under the amendments made by the Laken Riley Act. Federal Respondents argue that such mandatory detention, without a bond hearing, does not violate Petitioner's due process rights. Petitioner responds that he is entitled to a bond hearing or release because, under the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), his

---

[6] Those grounds of inadmissibility are: "presen[ce] in the United States without being admitted or paroled," 8 U.S.C. § 1182(a)(6)(A)(i); "seek[ing] to procure . . . a visa, or other documentation, or admission into the United States" by fraud or misrepresentation, *id.* § 1182(a)(6)(C)(i); and failure to possess "a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter," *id.* § 1182(a)(7)(A)(i)(I).

continued mandatory detention based on an offense for which he has not been convicted violates his right to due process.

As the Court previously explained when addressing a similar question in *Quintana Cartaya v. Bernacke*, No. 2:26-CV-00438-GMN-MDC, 2026 WL 1229965, at *1 (D. Nev. May 5, 2026), a petitioner may bring an as-applied constitutional challenge to the application of § 1226(c). *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) ("Our decision today on the meaning of [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute . . . .").

Federal Respondents spend just about one page arguing that Petitioner's mandatory detention under § 1226(c) does not violate his due process rights.  They wholly fail to respond to Petitioner's due process argument under the *Mathews v. Eldridge* test.  While Petitioner's due process argument is essentially unopposed, the Court nevertheless analyses the *Mathews* factors to determine whether Petitioner's due process rights have been violated by his mandatory detention under 1226(c).

First, as explained in the due process analysis above, the private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention." *Hamdi*, 542 U.S. at 529; *see also Rodriguez Diaz*, 53 F.4th at 1207 ("[A]n individual's private interest in freedom from prolonged detention is unquestionably substantial.").  Further, Petitioner's private interest is not diminished by a final order of removal, nor by having already been afforded process such as an individualized bond hearing. *See id.* at 1208 (finding petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional process available to him through additional bond hearing upon a showing of materially changed circumstances).  Because Petitioner has been detained for almost ten months without a bond hearing, he "has a legitimate and reasonably strong private liberty interest under *Mathews*." *Id.*

at 1207. This interest is further heightened here where Petitioner was previously granted humanitarian parole and spent over two years living freely in the United States. (I-94, Ex. 1 to Am. Pet. Exs.); (I-213, Ex. 1 to Fed. Resp.).

Second, the risk of erroneous deprivation of Petitioner's liberty is also high, especially because there is no evidence that "*any* procedure is currently available for Petitioner to challenge the lawfulness of his detention under § 1226(c)." *E.C. v. Noem*, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264, at *10 (D. Nev. Oct. 14, 2025). Because § 1226(c) requires mandatory detention, any request for a bond hearing before an IJ would be denied for lack of jurisdiction to consider bond, as has already occurred in this case. *See id.*[7] Moreover, "[t]he BIA does not have jurisdiction to determine the constitutionality of the statutes it administers," *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (quoting *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006)). Thus, the only process available to Petitioner to challenge the constitutionality of § 1226(c)(1)(E)(ii) as applied to him is through a habeas petition before this Court.

Further, while in ICE detention, Petitioner does not have the ability to contest his criminal charges. The Supreme Court has previously addressed the constitutionality of § 1226(c) in *Demore*, 538 U.S. 510. There, the Court upheld the constitutionality of a mandatory detention procedure as "applie[d] to a class of noncitizens who had already been convicted (beyond a reasonable doubt) of committing certain serious crimes." *Hernandez-Lara v. Lyons*, 10 F. 4th 19, 35 (1st Cir. 2021). This holding specifically addressed the due process

---

[7] Federal Respondents briefly argue that Petitioner has been given an opportunity before the IJ and BIA to seek release on bond, and because he chose not to appeal the bond decision, he cannot assert that he has not been afforded due process rights. The Court construes this argument as an exhaustion argument, and incorporates its reasoning in *Quintana Cartaya*, 2026 WL 1229965, at *3–4, to reject this argument.

Federal Respondents also appear to argue that Petitioner's pending *merits* appeal at the BIA demonstrates that Petitioner has been afforded due process as it related to his continued detention. The Court disagrees. The process available to Petitioner regarding his asylum claim and order of removal is separate and distinct from the question at issue before this Court: whether Petitioner's due process rights have been violated by his detention.

rights of individuals whose convictions "were obtained following the full procedural protections our criminal justice system offers." *Demore*, 538 U.S. at 513.  Here, in contrast, § 1226(c) as amended by the Laken Riley Act and applied to Petitioner would mandate his detention even though he has received no process regarding his pending criminal charges.

Moreover, because Petitioner has not yet been convicted of the crimes he has been charged with, the risk of erroneous deprivation is meaningfully higher than it is for those the Supreme Court considered in *Demore*.  There, the Court "underscored the legislative findings supporting Section 1226(c)—prior to the Laken Riley Act's amendments to that section—of the need to detain 'deportable criminal [noncitizens]' based on statistics suggesting their likelihood of not appearing for removal hearings and their likelihood of subsequent arrests before deportation proceedings began." *Doe v. Moniz*, 800 F. Supp. 3d 203, 215 (D. Mass. 2025).  Civil immigration detention is "nonpunitive in purpose and effect[,]" and is justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690.  But, in enacting the Laken Riley Act, Congress made no finding that merely being charged with a theft-related offense corresponds to a higher risk of dangerousness or flight. *See Muniz*, 800 F. Supp. 3d at 216.  Here, where Petitioner has been charged with, but not yet convicted of, a theft-related offense, Respondents have not explained how detention without a bond hearing "serves the purpose of preventing deportable criminal [noncitizens] from fleeing prior to or during their removal proceedings." *Demore*, 538 U.S. at 528.

Additionally, in upholding mandatory detention under § 1226(c) in *Demore*, the Supreme Court made repeated references to the "brief" and "limited" timeframe for which individuals are typically detained under § 1226(c). *See* 538 U.S. at 513 ("brief period"); *id.* at 523 (("brief period"); *id.* at 526 ("limited period"); *id.* at 529 n.12 ("[t]he very limited time of the detention at stake under § 1226(c)"); *id.* at 531 ("limited period").  *Demore* specifically

noted that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal," relying on statistics from the Executive Office for Immigration Review ("EOIR"). *Id.* at 530. Here, Petitioner has been detained for over nine months, a significantly longer period than that contemplated in *Demore*. Taken together, these considerations demonstrate there is a significantly high risk of erroneous deprivation without additional process.

As discussed in the humanitarian parole section above regarding the third *Mathews* factor, the Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. But Respondents have not explained how detaining Petitioner without due process serves these interests. In fact, limiting detention to noncitizens who are shown to be dangerous or a flight risk may serve the government's and the public's interest by limiting "the fiscal and administrative burdens attendant to immigration detention." *E.C.*, 2025 WL 2916264, at *11; *see also Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that in 2017 "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

On balance, the *Mathews* factors weigh in favor of Petitioner, and the Court therefore finds that Petitioner is entitled to, at a minimum, a bond hearing to address the violation of his due process rights caused by his mandatory detention under § 1226(c).

**C. Scope of Relief**

Petitioner asks this Court to order a bond hearing or release. The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical

custody." *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968). "Its mandate is broad with respect to the relief that may be granted." *Id.* "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

Here, the Court has concluded that Petitioner's parole was wrongly revoked, and that his prolonged detention without a bond hearing violates his due process rights. Petitioner has been detained since August 5, 2025, despite receiving no process prior to his re-detention. The Supreme Court has consistently held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). While a post-deprivation hearing may be appropriate in situations that urgently require arrest, absent evidence of such urgent concerns, a pre-deprivation hearing is required to satisfy due process. *Id.* at 128; *Ortega*, 415 F. Supp. 3d at 970. Respondents here make no argument that Petitioner's arrest was urgently required, nor do they make any assertion that Petitioner is in fact a flight risk or poses a danger. Rather, they merely argue that his detention is mandatory under the statute, without responding at all to Petitioner's argument that mandatory detention violates his due process rights. Thus, "because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before his unlawful detention." *Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) (emphasis in original). Further, a bond hearing would not adequately vindicate Petitioner's rights. Indeed, ordering a hearing while Petitioner remains detained, after over nine months of unconstitutional detention, would reward the government for failing to provide Petitioner any process before detaining him. *See id.* The Court therefore finds that the appropriate remedy here is immediate release subject to the conditions of Petitioner's prior parole.

IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that Petitioner's Amended Petition for Habeas Corpus Relief under 28 U.S.C. § 2241, (ECF No. 13), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner must be released from detention by **May 21, 2026, at 4:00 p.m.**, subject to his prior conditions of parole.

**IT IS FURTHER ORDERED** that Respondents cannot impose additional restrictions on Petitioner, unless those conditions are determined to be necessary at a future pre-deprivation hearing.

**IT IS FURTHER ORDERED** that Respondents' counsel must notify Petitioner's counsel in writing of the location, date, and approximate time of Petitioner's release in advance of said release.  At minimum, Respondents must notify Petitioner's counsel as soon as Petitioner is released from NSDC and being transported to the ERO office.

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property upon his release.

**IT IS FURTHER ORDERED** that, prior to any re-detention of Petitioner, the government must provide no less than seven days' notice to Petitioner and must hold a constitutionally compliant pre-deprivation hearing before a neutral arbiter at which the government bears the burden of providing flight risk or danger by clear and convincing evidence.[8]  This Order does not address the circumstances in which Respondents may detain Petitioner in the event he becomes subject to an executable final order of removal.

**IT IS FURTHER ORDERED** that the parties shall file a **JOINT** status report by **May 22, 2026**, to certify compliance with the Court's Order.

---

[8] Given Petitioner's prolonged detention in violation of his constitutional rights, and "[b]ecause it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'— deprivation of liberty—is so significant," the Court finds it constitutionally necessary to impose this equitable remedy in order to minimize the risk of additional error. *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011).

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted or currently named Kristi Noem.  The Clerk of Court is kindly directed to update the docket as well as the case caption to reflect this substitution.

The Clerk of Court is also kindly directed to change Petitioner's name on the docket to reflect the name provided in the Amended Petition.

Counsel for Respondents are directed to immediately provide notice of this Order to the parties they represent.

**DATED** this __20__ day of May, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court